UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CHANDRA K. BARRETT,

                              Plaintiff,

-against-

RUBEN R. ROSARIO et al.,

                              Defendants.
------------------------------------------------------------------X

19-CV-7815 (GHW) (VF)

**OPINION & ORDER**

**VALERIE FIGUEREDO, United States Magistrate Judge.**

      Plaintiff Chandra K. Barrett brought this action against Defendants Ruben R. Rosario and Aspen Landscaping Contracting, Inc. ("Aspen" and collectively with Rosario, "Defendants") seeking damages for injuries suffered during a motor vehicle accident that occurred on May 2, 2018 in the Bronx, New York. See ECF No. 1-1 ¶¶ 12-13. From September 2018 through April 20, 2021, Plaintiff was represented by Michael G. LoRusso. See ECF No. 38. Plaintiff then retained new counsel, Liakas Law, see ECF No. 47, and that firm represented Plaintiff from July 14, 2021, through a settlement and voluntary dismissal of the action on December 7, 2022, see ECF Nos. 93, 96.

      Presently before the Court is a fee dispute between LoRusso and Plaintiff's current attorney, Stephen Liakas, concerning the amount of attorneys' fees LoRusso is entitled to receive for his work on this matter. See ECF Nos. 109-111. For the reasons stated below, LoRusso is awarded a charging lien in the amount of $49,995 in attorneys' fees and $1,129.36 in costs.

1

**BACKGROUND**

A.  <u>Factual and Procedural History</u>

On May 2, 2018, Plaintiff was driving westbound on the Cross Bronx Expressway in the Bronx when Rosario, driving a landscaping vehicle owned by Aspen, collided with Plaintiff's vehicle. <u>See</u> ECF No. 1-1 ¶¶ 8-9, 12; <u>see also</u> ECF No. 12 at 1. As a result of the motor vehicle accident, Plaintiff suffered injuries to her neck and back requiring surgery. <u>See, e.g.</u>, ECF Nos. 12, 16.

Plaintiff initially commenced this action in Supreme Court, Bronx County, and Defendants removed it to this Court on August 20, 2019. <u>See</u> ECF Nos. 1, 3. The Court scheduled an initial pretrial conference for November 19, 2019. <u>See</u> ECF No. 10. The parties engaged in discovery and Plaintiff turned over to Defendants her medical records and authorizations for medical records. <u>See</u> ECF Nos. 12, 23, 25.

On December 31, 2019, Plaintiff's counsel informed the Court that Aspen had filed for Chapter 11 Bankruptcy in the United States Bankruptcy Court for the District of New Jersey. <u>See</u> ECF No. 16. On January 2, 2020, the Court stayed the matter pursuant to 11 U.S.C. § 362. <u>See</u> ECF No. 17. On September 17, 2020, Plaintiff's counsel informed the Court that Aspen had agreed to enter into a stipulation permitting Plaintiff to proceed directly against Aspen's insurance company in this matter. <u>See</u> ECF No. 19. The Court held a status conference on October 16, 2020, and the parties subsequently submitted an amended civil case management plan. <u>See</u> ECF No. 24; <u>see also</u> Minute Entry, dated 10/16/2020.

On March 12, 2021, Plaintiff's counsel informed the Court that the parties had reached a settlement. <u>See</u> ECF No. 27. Accordingly, the Court entered an order on March 12, 2021, indicating that the case would be conditionally discontinued without prejudice and that either

party could seek to reopen the case within 30 days in the event the settlement was not consummated. See ECF No. 28.

On April 6, 2021, LoRusso submitted a motion to withdraw as Plaintiff's attorney and grant his firm a charging lien.[1] See ECF No. 30. In his sworn declaration, LoRusso explained that communications between himself and Plaintiff had broken down, such that he was unable to continue representing Plaintiff. See ECF No. 30-1 ¶¶ 5-8. On April 7, 2021, the Court scheduled a conference for April 20, 2021, to address the pending motion to withdraw. See ECF Nos. 32, 37. On April 20, 2021, the Court granted LoRusso's motion to withdraw as counsel. See ECF No. 38. The Court further stayed the matter until May 20, 2021, to permit Plaintiff time to obtain new counsel. Id.

On July 14, 2021, Stephen Liakas filed a notice of appearance on behalf of Plaintiff. ECF No. 47. The Court scheduled a conference for August 17, 2021, and directed the parties to submit a joint status update in advance of the conference. See ECF No. 50. In a joint status update filed on August 13, 2021, the parties informed the Court that Defendants intended to seek leave to file a motion to enforce the settlement with Plaintiff. See ECF No. 51 at 2. Plaintiff contended that she had not agreed to settle the case and never signed a document evidencing a settlement. Id. at 3. At the conference on August 17, the Court set a briefing schedule for Defendants' motion to enforce the settlement agreement. See ECF No. 52. On September 24, 2021, Defendants filed their motion to enforce the settlement agreement. See ECF Nos. 54-56. Plaintiff filed her opposition to the motion on October 8, 2021. See ECF No. 58. Defendants filed their reply brief on October 12, 2021. See ECF No. 59.

---

[1] Co-counsel from Hogan & Cassell, LLP also sought to withdraw as Plaintiff's counsel. See ECF No. 35.

Because factual issues precluded the Court from resolving the motion without a hearing, the Court scheduled an evidentiary hearing for March 7, 2022. See ECF Nos. 61, 78, 79. Following the evidentiary hearing on March 7, the Court scheduled a conference for March 21, 2022. See ECF No. 83. At that conference, the Court made factual findings orally on the record. See ECF No. 103. The Court found that Plaintiff never signed a written settlement agreement. Id. at 8. The Court also credited the testimony of Defendants' witnesses and found that Plaintiff was not a credible witness. Id. at 11-16. Specifically, the Court found that Plaintiff had lied under oath and had, consistent with the testimony of Defendants' witnesses, authorized LoRusso to settle the case for $150,000. Id. at 16. Although the Court concluded that LoRusso had actual authority to settle the case for $150,000, it nevertheless determined that the settlement agreement was not enforceable absent a written agreement. Id. at 19-24. The Court thus denied Defendants' motion to enforce the settlement agreement. Id. at 24. The Court also issued an order memorializing its finding that Plaintiff had "lied while under oath during the Court's March 7, 2022 evidentiary hearing." ECF No. 83.

On April 8, 2022, the parties submitted a joint status update, informing the Court of certain outstanding discovery in the case, and the Court subsequently granted a 60-day extension of the discovery deadlines. ECF Nos. 85-86. The Court held a conference with the parties on August 11, 2022, to address a motion filed by Defendants on August 2, 2022, seeking to compel Plaintiff to produce responses to certain document demands and interrogatories. See ECF Nos. 87, 90. Plaintiff also submitted a letter in advance of the conference, indicating that she would seek to preclude Defendants from offering expert testimony at trial due to their failure to provide timely expert discovery. See ECF No. 89. The Court granted Defendants' motion and also extended the close of fact discovery to October 28, 2022. See ECF No. 90.

On December 7, 2022, Plaintiff's counsel notified the Court that the parties had reached a settlement on August 16, 2022. See ECF No. 93. Plaintiff had sent Defendants an executed settlement agreement on August 18, 2022. Id. On December 7, 2022, the parties submitted a stipulation of voluntary dismissal of all claims with prejudice. See ECF Nos. 95-96.

B.    The Instant Dispute

On March 9, 2023, LoRusso wrote to the Court, explaining that Liakas had not notified him of the settlement and had taken the position that LoRusso was not entitled to any fees. See ECF No. 97. The matter was subsequently referred to the undersigned for a determination of the amount of LoRusso's charging lien, if any.[2] See ECF No. 100.

On October 30, 2023, LoRusso filed a letter brief in support of his motion for fees. See ECF No. 109. Prior to his discharge, LoRusso had pursued settlement of Plaintiff's case and obtained her authority to settle for $150,000. See ECF No. 109 at 4, 6. LoRusso contends that the amount due an outgoing attorney is based on the proportionate share of the work performed, and he argues that he is entitled to a larger percentage of the total legal fees than Liakas because he spent significantly more time working on this matter than Liakas. See ECF No. 111 at 8; ECF No. 109 at 6-7. LoRusso did not keep track of the hours he or his staff worked on the matter, because the firm had a contingency fee agreement with Plaintiff that entitled the firm to 33.33% of any recovery obtained by Plaintiff. See ECF No. 109 at 6; ECF No. 111 at 6; ECF No. 109-4. Although LoRusso did not maintain contemporaneous time records, he recounted the legal work he performed on Plaintiff's case prior to his withdrawal in an exhibit attached to his letter motion. See ECF No. 109-5.

---

[2] On May 10, 2024, the parties consented to my jurisdiction for resolution of the fee dispute. See ECF No. 116.

Liakas filed an opposition letter brief on December 4, 2023. See ECF No. 110. After Liakas replaced LoRusso, Liakas obtained a settlement for Plaintiff of $600,000. ECF No. 110 at 6. Liakas argues that LoRusso is entitled to no amount in fees or, alternatively, an award of $50,000—the amount LoRusso would have received if Plaintiff had accepted the settlement of $150,000 that LoRusso negotiated before his withdrawal from the case.[3] See ECF No. 110 at 1-3, 6. Liakas also did not maintain contemporaneous time records, but he submitted a declaration outlining the work he performed on the case. See ECF No. 119-1 ¶ 13. The crux of the parties dispute therefore is the amount of fees LoRusso is entitled to receive under his charging lien.

## DISCUSSION

A.  Legal Standard

A district court with federal jurisdiction over a case, "retains ancillary jurisdiction after dismissal to adjudicate collateral matters such as attorney's fees." Tancredi v. Metro. Life Ins. Co., 378 F.3d 220, 225 (2d Cir. 2004) (citations and internal quotation marks omitted); accord In re Austrian & German Bank Holocaust Litig., 317 F.3d 91, 98 (2d Cir. 2003); Vitalone v. City of New York, 395 F. Supp. 3d 316, 322 (S.D.N.Y. 2019). New York law governs disputes over a charging lien in federal courts sitting in New York. Butler, Fitzgerald & Potter v. Sequa Corp., 250 F.3d 171, 178 (2d Cir. 2001).

In New York, "[t]he charging lien was created by the common-law courts as a device to protect an attorney by 'disabling clients from receiving the fruits of recoveries without paying for the valuable services by which the recoveries were obtained.'" LMWT Realty Corp. v. Davis Agency Inc., 85 N.Y.2d 462, 469 (1995) (quoting Goodrich v. McDonald, 112 N.Y. 157, 163

---

[3] In his submission, Liakas indicates that the fee award on a settlement amount of $150,000 is $50,000. See, e.g., ECF No. 110 at 2-3. However, the contingency fee agreement between LoRusso and Plaintiff was 33.33% which yields a fee amount of $49,995 on a settlement amount of $150,000.

(1889)). Although the charging lien has its roots in common law, it is an equitable doctrine and the "overriding criterion for determining the amount of a charging lien is that it be 'fair.'" Sutton v. N.Y.C. Transit Auth., 462 F.3d 157, 161 (2d Cir. 2006) (quoting Cohen v. Grainger, Tesoriero, & Bell, 81 N.Y.2d 655, 658 (1993)).

The charging lien is codified in New York Judiciary Law § 475, which states that an attorney "who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor, and the proceeds thereof in whatever hands they may come[.]" N.Y. Judiciary Law § 475. Pursuant to Section 475, "an attorney dismissed without cause is entitled to liens in his favor to secure payment of reasonable fees and costs incurred prior to the date of substitution of counsel." Sequa Corp. v. GBJ Corp., 156 F.3d 136, 147 (2d Cir. 1998). "[A]n attorney need not be counsel of record at the time a plaintiff receives judgment or settlement proceeds in order to have a lien on those proceeds, so long as the attorney was counsel of record at one point in the proceedings." Petition of Harley & Browne, 957 F. Supp. 44, 48 (S.D.N.Y. 1997) (citing Klein v. Eubank, 87 N.Y.2d 459, 462 (1996)). However, "before an attorney can be granted a lien pursuant to Judiciary Law § 475 he or she must have appeared for the client by 'participating in a legal proceeding on the client's behalf or by having his [or her] name affixed to the pleadings, motions, records, briefs, or other papers submitted in the matter.'" Cataldo v. Budget Rent A Car Corp., 226 A.D.2d 574, 574 (2nd Dept. 1996) (citing Ebert v. New York City Health & Hosps. Corp., 210 A.D.2d 292, 292-93 (2nd Dept. 1994)); see also Mason v. City of New York, Nos. 13-CV-7139 (PKC), 12-CV-5885 (PKC), 2016 WL 2766652, at *3 (S.D.N.Y. May 12, 2016).

7

When the dispute over fees is between attorneys, "[t]he discharged attorney may elect to receive compensation immediately based on quantum meruit or on a contingent percentage fee based on his or her proportionate share of the work performed on the whole case." Cohen v. Grainger, Tesoriero & Bell, 81 N.Y.2d 655, 658 (1993) (citing Lai Ling Cheng v. Modansky Leasing Co., 73 N.Y.2d 454, 458 (1989)); accord Budin, Reisman, Kupferberg & Bernstein, LLP v. Law Offices of Rosemarie Arnold, 79 F. App'x 460, 461 (2d Cir. 2003) (summary order). "[W]hen attorneys agree to put off getting a quantum meruit recovery" upon discharge, "a contingent fee basis should be presumed, with the discharged attorney receiving a 'prorated share.'" Budin, 79 F. App'x at 461 (quoting Cohen, 81 N.Y.2d at 660); accord Hervochon v. Iona Coll., No. 14-CV-6017 (CS) (PED), 2019 WL 2451295, at *2 (S.D.N.Y. Jan. 18, 2019); Russo v. City of New York, 48 A.D.3d 540, 541 (2d Dep't 2008) ("Where there is a fee dispute between attorneys, the amount due an outgoing attorney is based on the proportionate share of the work performed.").

  B. Fee Award

  1. *LoRusso's charging lien*

There is no dispute that LoRusso was Plaintiff's attorney of record in this suit prior to April 20, 2021. See, e.g., ECF No. 109-4 (attaching retainer agreement); ECF No. 38 (order granting motion to withdraw). LoRusso sought to withdraw as Plaintiff's counsel due to Plaintiff's lack of cooperation and a breakdown in communications. See ECF No. 30-1 ¶¶ 5-8. Such a withdrawal is not a discharge for cause by Plaintiff. See Allstate Ins. Co. v. Nandi, 258 F. Supp. 2d 309, 312 (S.D.N.Y. 2003) ("Courts typically find a discharge 'for cause' where there has been a significant breach of legal duty."); Budin, 79 F. App'x at 461 ("It is well-settled that attorneys lose their right to fees if discharged for cause.").

8

To the extent Liakas argues that LoRusso is not entitled to a charging lien because he acted in ways that were adverse to his client's interests, see ECF No. 110 at 2-3, the argument ignores Judge Woods' findings following the evidentiary hearing. As Judge Woods found, Plaintiff had authorized LoRusso to accept a settlement of $150,000, and Plaintiff subsequently lied under oath when she denied that she had authorized LoRusso to settle the case. See ECF No. 103 at 11-24. In other words, Plaintiff's conduct made it untenable for LoRusso to continue with her representation. LoRusso thus did not lose his right to attorney's fees upon his discharge, and he is entitled to a charging lien enforceable against the proceeds of the settlement in this action.

   *2. LoRusso's contingent fee calculation*

Ultimately, Plaintiff settled the matter for $600,000. See ECF No. 119-1 ¶ 42. Plaintiff entered into a contingent fee agreement with Liakas, allowing his firm to retain 33.33% of any recovery she obtained. See ECF No. 119-1 ¶ 8. As such, $199,980 from the $600,000 Plaintiff obtained through the settlement is allocable to the payment of attorneys' fees. Having determined that LoRusso has a charging lien enforceable against the proceeds of the settlement in this action, the Court next calculates LoRusso's share of the $199,980 in attorneys' fees.

At the time of his withdrawal application, LoRusso did not seek immediate compensation of a fixed dollar amount. Instead, LoRusso requested a charging lien and asked that the amount of the lien "be determined at the conclusion of the matter." See ECF No. 30-1 ¶ 10. Liakas also intended for the amount of the charging lien to be determined at the conclusion of the case. In an e-mail exchange between LoRusso and Liakas, Liakas told LoRusso that "[w]e can deal with your lien, if any, at the end of the case." See ECF No. 109-2 at 3. LoRusso should thus be awarded attorney's fees on a contingent-fee basis and receive his prorated share of the settlement amount set aside for legal fees. Budin, 79 F. App'x at 461; Cohen, 81 N.Y.2d at 660 ("Where an

9

election is not made or sought at the time of discharge, the presumption should be that a contingent fee has been chosen."); see also Mason, 2016 WL 2766652, at *4 (concluding that contingent fee calculation was appropriate in determining amount of charging lien were determination of the amount of the outgoing attorney's compensation was deferred until the conclusion of the matter).

"In determining the contingent fee award for a former attorney, courts base the award 'on his or her proportionate share of the work performed on the whole case.'" Cruz v. Olympia Trails Bus Co., No. 99-CV-10861 (JSR)(HBP), 2005 WL 3071473, at *2 (S.D.N.Y. Nov. 14, 2005) (quoting Budin, 79 F. App'x at 461). In making this determination, courts consider the following factors: "the time and labor spent by each, the actual work performed, the difficulty of the questions involved, the skills required to handle the matter, the attorney's skills and experience, and the effectiveness of counsel in bringing the matter to resolution." Id. at 3 (quoting Foppiano v. City of New York, No. 00-CV-7968 (FM), 2002 WL 31202716, at *4 (S.D.N.Y. Sept. 25, 2002) (collecting cases)). "There is no formula or bright-line rule that can be applied" in "[q]uantifying the respective contributions" of the discharged and new attorneys. Id. at 5. "[T]he determination of an appropriate sum for an attorney's charging lien is 'committed to the sound discretion of the trial court,'" and thus a "'court is not required to precisely spell out how it weighed the various factors making up the fee allowed.'" Agence France Presse v. Morel, No. 10-CV-2730 (AJN), 2015 WL 13021413, at *8 (S.D.N.Y. Mar. 23, 2015) (quoting Ocean World Lines, Inc. v. Atlant (USA) Inc., No. 06-CV-6259 (WHP) (GW), 2008 WL 1776415, at *2 (S.D.N.Y. Apr. 17, 2008)). Accordingly, in determining the proper allocation of fees where there is a charging lien under § 475, courts need not engage in the "lodestar" analysis of calculating a "presumptively reasonable fee" as courts do in calculating a statutory attorney fee award due to a

prevailing party. See Agence France Presse, 2015 WL 13021413, at *8; see, e.g., Hervochon, 2019 WL 2451295, at *3-6; Figueroa v. City of New York, No. 05-CV-9594 (JGK), 2011 WL 5547976, at *3-4 (S.D.N.Y. Nov. 15, 2011).

Beginning with the skill and experience of the attorneys, LoRusso has been practicing law for 35 years. See ECF No. 109 at 7. Liakas founded Liakas Law in 2014 and is a senior partner at the firm, which exclusively handles personal injury cases like Plaintiff's case here. See ECF No. 119-1 ¶¶ 3-4, 6. Both attorneys are experienced practitioners and there is no significant difference in their skills and experience.

Turning to the difficulty of the questions involved, the skills required to handle Plaintiff's case, and the time and actual work performed by the attorneys, this is a personal injury action involving a motor vehicle accident. LoRusso began representing Plaintiff in September 2018 through discovery in the case up until March 2021, when he attempted (but failed) to reach a settlement with Defendants. See ECF No. 109-5. LoRusso spent time collecting Plaintiff's medical records, prepared the complaint in this case, prepared interrogatories and document demands for Plaintiff and responded to Defendants' document demands, and defended Plaintiff's deposition. Id. at 1-6. Liakas entered the case in July 2021, after the failed settlement attempt, and during a period of time when discovery was still ongoing. See ECF No. 51 at 3. Defendants had not yet conduced a medical examination of Plaintiff and Defendants were moving to enforce the settlement agreement with Plaintiff. Id. Liakas prepared Plaintiff's opposition to Defendants' motion to enforce the settlement, prepared for and represented Plaintiff during the evidentiary hearing in connection with the motion, and following the Court's denial of Defendants' motion, engaged in additional discovery with Defendants. See ECF Nos. 85, 119-1. On July 7, 2022, Plaintiff appeared for a medical examination by Defendants' expert. See ECF No. 89. Liakas

also prepared Plaintiff's expert discovery and conferred with Plaintiff's expert, and sought to preclude Defendants from offering expert testimony at trial given their failure to timely produce such discovery. Id.; ECF No. 119-1 ¶¶ 39-41. On August 16, 2022, Liakas successfully negotiated a settlement for Plaintiff. See ECF No. 93. After the settlement, Liakas began the process of addressing potential liens. See ECF No. 119-1 ¶ 43. Neither attorney maintained contemporaneous time records and it is thus impossible to make a precise determination as to the number of hours each attorney spent on the case.

Regarding the effectiveness of counsel in reaching a resolution, this is the key distinguishing factor between the two attorneys. LoRusso negotiated a $150,000 settlement for Plaintiff. LoRusso, by contrast, negotiated a $600,000 settlement for Plaintiff. LoRusso contends that he completed much of the work on the matter and should therefore receive a fee award in excess of one-third of the $150,000 settlement amount he negotiated. See ECF No. 109 at 4. But LoRusso recommended that Plaintiff accept the $150,000 settlement. Given his one-third contingency-fee arrangement with Plaintiff, LoRusso was willing to accept $49,995 for the time he spent on Plaintiff's case.

LoRusso focuses on the time spent by Liakas opposing Defendants' motion to enforce the settlement, arguing that Liakas did not spend the majority of his time on the case working towards resolution of the matter. See ECF No. 109 at 6; ECF No. 111 at 5. This argument is unpersuasive. It ignores that had Liakas not successfully opposed Defendants' motion, the settlement amount would have been $150,000 and LoRusso could not now argue for a greater amount in fees than $49,995. The argument also minimizes Liakas' success in persuading Defendants to significantly raise their settlement offer. It was Liakas who successfully obtained a settlement for Plaintiff that was four times the amount LoRusso had negotiated. LoRusso offers

no persuasive reason why he should reap the benefits of those efforts through an award of fees in excess of $49,995.

On balance, LoRusso is entitled to compensation for his proportionate share of the work performed on the case, but that proportionate share is fairly and reasonably valued at $49,995. Moreover, because charging liens under § 475 are "equitable in nature," an award of prejudgment interest under C.P.L.R. § 5001 et seq. is not appropriate. See Agence France Presse, 2015 WL 13021413, at *12 (concluding that party obtaining charging lien was not entitled to prejudgment interest because § 475 is an equitable provision). Lastly, LoRusso submitted a list of costs he incurred during his representation of Plaintiff, totaling $1,129.36. See ECF No. 109-3. He is entitled to those costs as well.

## CONCLUSION

For the reasons discussed herein, LoRusso's motion is **GRANTED** to the extent that he is granted a charging lien in the amount of $49,995 for attorneys' fees and $1,129.36 in costs, with no prejudgment interest. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 109.

**SO ORDERED.**

DATED:   New York, New York
         August 27, 2024

_____
VALERIE FIGUEREDO
United States Magistrate Judge

13